IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY M. HINES, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | )   CASE NO. 2:09-cv-1026-MEF |
| | ) |
| SOUTH ALABAMA REGIONAL | )   (WO- Do Not Publish) |
| AIRPORT AUTHORITY, | ) |
| | ) |
|     DEFENDANT. | ) |

## **MEMORANDUM OPINION AND ORDER**

Anthony M. Hines ("Hines") brings this action against his former employer, the South Alabama Regional Airport Authority ("the Airport Authority") alleging discrimination against him on the basis of his race. Hines brings his claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1] This cause is presently before the Court on the Defendant's Motion for Summary Judgment (Doc. # 20). For the reasons set forth below, the Court finds that the motion is due to be DENIED.

### **JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction and venue, and the Court finds adequate allegations in support of personal jurisdiction and venue.

---

[1] Hines' claims are brought solely pursuant to Title VII. He makes no claims pursuant to any other federal statute or to any state law.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

In August of 2008, the Jed Blackwell ("Blackwell"), the Co-Executive Director for the Airport Authority, hired Hines as a groundskeeper.  The job description for the groundskeeper position stated that groundskeepers were to report to work at 8 a.m. from Monday through Friday, but that hours of work might vary.  It states that excessive absences and tardiness will not be tolerated.  The position was scheduled for a lunch break from 12 to 12:30.  The groundskeeper was responsible for cutting the grass, trimming the weeds, and

edging the grass on airport property. The groundskeeper was also responsible for checking and maintaining lawnmowers and other equipment.

Hines is African-American, and at the time he was hired, he was the only non-white employee of the Airport Authority. According to his sworn affidavit, Hines replaced a Caucasian grounds keeper. Soon after he was hired, Hines was trained to work as a refueler as well as groundskeeper. He worked as a refueler as needed at first, but eventually he was working as a refueler every Monday, when things got busy, and fill in when a refueler was absent from work. Despite taking on these different and additional duties he continued to be paid as a groundskeeper only.

At some point, Blackwell offered Hines the job of a night refueler, but at the same rate of pay as he was making as a groundskeeper,[2] which was less than the Airport Authority paid the other refuelers. Because the pay was going to be less than what the other refuelers received, Hines declined the position.

All Airport Authority employees received bonus pay from time to time. According to Hines' testimony in his affidavit, the Caucasian groundskeeper he replaced received bonuses. Hines contends that he received less money than Caucasian employees in bonus pay. Hines asked why he did not receive the same bonuses. Blackwell told Hines it was

---

[2] The Airport Authority maintains that Hines was offered the position as a refueler at a higher rate of pay than Hines received as a groundskeeper, but due to the procedural posture of this case, the Court must credit Hines' sworn testimony for purposes of deciding this motion.

because he was different. Hines believes that difference was his race, but he does not state that Blackwell made that specific statement.

According to Hines, he was treated differently than Caucasian employees with respect to leave from work. Moreover, he states that he was disciplined or warned regarding the length of his lunch break, but Caucasian employees were not even though they were also late, sometimes much later than Hines. By his affidavit, Hines disputes the evidence that the Airport Authority has presented concerning his being habitually tardy and absent excessively. He also identifies Caucasian employees who received different treatment with respect to leave from work.

According to the Airport Authority, it terminated Hines' employment on June 5, 2009, because of his work ethic related to his job. Some of the Airport Authority's paperwork from Hines' personnel file provides more specificity in that it indicates the reasons for the termination of Hines' employment were: "being absent excessively, abusing sick leave, and being tardy habitually." *See* Doc. # 20-3. While Hines had been absent from work for a family funeral, a Caucasian employee used one of the mowers without checking the old level and blew up the mower. Blackwell blamed Hines for this damage to the equipment because maintenance of the mowers was part of his responsibility. According, to Hines' sworn affidavit, after the termination of his employment the Airport Authority had a Caucasian male take over Hines' groundskeeping duties. The Airport Authority states that Hines was replaced by another African-American.

5

## DISCUSSION

### A. SATISFACTION OF ADMINISTRATIVE PREREQUISITES TO MAINTAINING TITLE VII ACTION

All of Hines' claims in this are brought pursuant to Title VII. Two of the grounds upon which the Airport Authority rely relate to the administrative prerequisites to maintaining an action pursuant to Title VII. Before analyzing his claims, the Court will first address the issue of administrative prerequisites.

**1. Timeliness of Lawsuit**

The Airport Authority contends that it is entitled to judgment as a matter of law on all of Hines' claims pursuant to Title VII because he failed to file this lawsuit within the time the law requires. Because the Court is satisfied that Hines timely commenced this action, for the reasons set forth below, the Court finds that judgment as a matter of law is not due to be granted on this basis and that the motion for summary judgment is due to be denied to the extent that it is urged for this reason.

The section of Title VII at issue here states that within 90 days after the issuance of a right-to-sue letter "a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). The Eleventh Circuit Court of Appeals has held that this provision means that in order to maintain Title VII claims, a plaintiff has the initial burden of establishing that he filed his complaint within 90 days of the date on which he received the EEOC's right-to-sue letter. *See, e.g., Green v. Union Foundry Co.*, 281 F.3dd 1229, 1233-34 (11th Cir. 2002); *Santini v. Cleveland Clinic Florida*, 232 F.3d 823 (11th

Cir. 2000). This time limit is not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (2982). It is subject to traditional principles of equitable tolling. *See Jackson v. Astrue*, 506 F.3xd 1349, 1353 (11th Cir. 2007).

The EEOC Dismissal and Notice of Rights form informing Hines of his right to sue and closing its file on his Charge of Discrimination indicates that it was mailed out on August 13, 2009 from the EEOC's office in Mobile, Alabama. In the Complaint dated November 6, 2009, Hines alleges that he received his Notice-of-Right-to-Sue Letter from the EEOC on November 6, 2009. *See* Doc. # 1- Compl. Hines has not, however, presented any evidence or testimony to support this allegation which the Airport Authority has challenged in its motion for summary judgment. From the evidence before the Court indicating that the letter was mailed on August 13, 2009, the only reasonable inference to be drawn is that it was received on August 14, 2009, August 15, 2009, or August 16, 2009. Assuming *arguendo* that Hines received it on August 14, 2009, his deadline for filing his lawsuit would be November 12, 2009.

Federal Rule of Civil Procedure 3 provides that a "civil action is commenced by filing a complaint with the court." The Supreme Court has held that an employee may not commence a civil action within the meaning of § 2000e-5(f)(1) by filing a copy of the right-to-sue letter, but the filing of additional documents such as a copy of the EEOC Charge of Discrimination with a right to sue letter is sufficient. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149 (1984); *Judkins v. Beech Aircraft Corp.*, 745 F.2d 1330, 1332

(11th Cir. 1984). Thus, the key to examining the sufficiency to a plaintiff's initial filing is whether it is sufficient to put a defendant on notice of the claims against it.

At the time Hines commenced this lawsuit, he was proceeding without the assistance of counsel. Using a form which allowed him to fill in the blanks to state a claim for employment discrimination, Hines commenced this lawsuit by filing a complaint containing several claims against South Alabama Regional Airport Authority and Jeb Blackwell.[3] *See* Doc. # 1 - Compl. Furthermore, he attached a copy of his completed EEOC Intake Questionnaire to his Complaint. *See* Doc. 1-1. This EEOC Intake Questionnaire clearly indicates that Hines' complaint is against his former employer, the Airport Authority. *Id.* On November 6, 2009, Hines also completed and signed an Application to Proceed in District Court Without Prepaying Fees or Costs form ("the Application"). *See* Doc. # 2.

The Clerk of the Court received the form Complaint and the Application on the morning of November 9, 2009. Consistent with Court procedures,[4] an employee of the office of the Clerk of the Court reviewed these submissions and noticed that although he had signed

---

[3] Hines listed both the Airport and Blackwell in the caption of the Complaint. In the body of the Complaint where he was to list the defendants' names, however, Hines identified only Blackwell as the defendant to this action. He did identify Blackwell as the "Airport Administrator." It is clear from the Complaint the Hines was attempting to bring suit relating to the treatment he received as an employee of the Airport Authority.

[4] These procedures are entirely consistent with the Federal Rules of Civil Procedure. Indeed, the commentary to the 1993 Amendments to Rule 11(a) state that "[u]nsigned papers are to be received by the Clerk, but then are to be stricken if the omission of the signature is not corrected promptly after being called to the attention of the attorney or the pro se litigant. Correction can be made by signing the paper on file or by submitting a duplicate that contains a signature." Commentary to 1993 Amendments to Fed. R. Civ. P. 11(a).

the Application form, Hines had failed to sign his form Complaint. Federal Rule of Civil Procedure 11(a) requires that every pleading must be signed either by an attorney of record or by a party personnally if that party is unrepresented. Fed. R. Civ. P. 11(a). That rule authorizes a court to strike pleadings which do not comply with this requirement, but only if the unsigned pleading is not promptly corrected after it has been called to the attorney or party's attention. *Id.*

On November 10, 2009, the Clerk of the Court sent Hines a letter containing the unsigned signature page from his form complaint. The letter informed Hines that he needed to sign and date the signature page and return the it to the court. Court records indicate that the Court received the signed and dated signature page back from Hines sometime *before* November 13, 2009. In such circumstances as presented by this case, the Court would not have had any cause to strike Hines' Complaint because he promptly corrected his error by signing it and returning it to the Clerk of the Court. Hines' failure to sign the document when it was initially filed does not support a finding by this Court that the Complaint was not filed on November 9, 2009, the date the Clerk's office docketed it. Federal Rule of Civil Procedure 5(d)(4) makes it clear that the Court must not refuse to file a paper solely because it is not in the form prescribed by the Federal Rules of Civil Procedure. Thus, from the record before it, the Court must conclude that Hines' original signed Complaint, including the copy of his EEOC Intake Questionnaire, was filed with this Court within 90 days after the earliest day he could have possibly received the right-to-sue letter that had been mailed

on August 13, 2009.

Because Hines was initially *pro se*, this suit was referred to a Magistrate Judge (Doc. # 3). The Magistrate Judge reviewed the Complaint and the Application and GRANTED the motion for leave to proceed *in forma pauperis*. (Doc. # 4). Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Magistrate Judge then recommended dismissal of Hines' claims pursuant to Title VII of the Civil Rights Act of 1964 to the extent that the claims were urged against Blackwell, an individual, because Title VII does not provide a cause of action against individuals. (Doc. # 4). The Magistrate Judge also directed that Hines file any amended complaint against his employer by no later than December 4, 2009. *Id.* On December 10, 2009, the Court adopted the recommendation of the Magistrate Judge and dismissed all claims against Blackwell.

The Airport Authority contends that this lawsuit was not filed until December 3, 2009. That assertion is incorrect. On December 3, 2009, Hines filed an Amended Complaint (Doc. # 3). By this pleading, Hines brought claims pursuant to Title VII for race discrimination solely against his former employer, the Airport Authority. The Clerk of the Court issued a Summons and delivered it, along with the Amended Complaint, to the Airport Authority. A complaint may be amended once as a matter of course within twenty-one days after it has been served.[5] Fed. R. Civ. P. 15(a)(1). An amendment to a complaint relates back to the date

---

[5] As of December 3, 2009, when Hines filed his Amended Complaint, his original Complaint had not been served.

of the original pleadings in several circumstances.  *See* Fed. R. Civ. P. 15(c)(1).  Indeed, because the Court finds that Hines' amendment satisfied the requirements of Federal Rule of Civil Procedure 15(1)(B) and (C), it relates back to the initial filing date of November 9, 2009.

For these reasons, the Court finds that the Airport Authority's motion for summary judgment is due to be DENIED to the extent that it is based on the contention that the lawsuit is barred because it was not timely filed.

### 2. Completion of Administrative Prerequisites to Suit

The Airport Authority contends that it is entitled to judgment as a matter of law on Hines' claims pursuant to Title VII relating to disparate treatment with regard to his pay and his leave because he failed to raise these issues in his Charge of Discrimination with the EEOC.  Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites relating to administrative exhaustion that a plaintiff must satisfy before filing a private civil action such as this one which is brought solely pursuant to Title VII.  *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002).  According to this provision, "[a] charge...shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C.§ 2000e-(5)(e)(1).  *Accord, Pijnenburg v. West Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied,* 273 F.3d 1117 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful

employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256-57 (1980).

A court faced with a challenge to an employment discrimination plaintiff's ability to litigate certain claims must start by ascertaining the permissible scope of a judicial complaint. This task requires the Court to first review the Charge of Discrimination that the plaintiff filed with the EEOC. *See, e.g., Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985); *Robinson v. Regions Finan. Corp.*, 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003). No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely filed EEOC charge. *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Robinson*, 242 F. Supp. 2d at 1079. "Not all acts complained of, however, need have been included in the EEOC charge; rather, an employee may include in her lawsuit a claim for injury resulting from any practice which 'was or should have been included in a reasonable investigation of the administrative complaint.'" *Robinson,* 242 F. Supp. 2d at 1079 (citing *Griffin*, 755 F.2d at 1522). "Thus, an employee's lawsuit is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination." *Robinson*, 242 F. Supp. 2d at 1079 (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).

Mindful of these legal precepts, the Court must start by examining the content of

Hines' Charges of Discrimination and the reasonable scope of the EEOC investigation based on the information it received from Hines. Hines' Charge of Discrimination itself is rather brief and raises only an allegation that the termination of Hines' employment was impermissibly based on his race. However, this was not the only information Hines provided to the EEOC. Hines also completed an EEOC Intake Questionnaire (Doc. # 1-1). In this questionnaire, he also complained of race discrimination during his employment with the Airport Authority. Specifically, he complained that he was not treated as well as Caucasian employees with respect to bonus pay, leave, and lunch breaks. *Id.* Thus, Hines disclosed the very complaints that the Airport Authority contends he did not share with the EEOC are set forth in his EEOC Intake Questionnaire. Accordingly, the record before the Court does not support a finding that these claims are outside the scope of the EEOC investigation and the motion for summary judgment is due to be DENIED to the extent that it is based on this contention.

**B. Substantive Analysis of Hines' Race Discrimination Claims**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993). Title VII also prohibits an employer from retaliating against an employee for reporting discrimination.

42 U.S.C. §§ 2000e3(a).[6]

Under Title VII, a plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Discriminatory intent can be established through a variety of means. *See, e.g., Davis v. Qualico Miscellaneous Inc.,* 161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence[7] of the employer's intent, the Court applies some version of the familiar tripartite burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny.

Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See, e.g., Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998). The purpose of the *prima facie* case

---

[6] 42 U.S.C. § 2000e3(a) bars retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

[7] Because Hines offers nothing which could conceivably be considered direct evidence or statistical evidence in support of any of his claims, the Court will analyze this motion for summary judgment under the circumstantial evidence paradigm. The statements to Hines that he was treated differently because he was "different" do not constitute direct evidence because they do not explicitly state that the difference was his race. These statements are circumstantial evidence of discrimination because with an inference the statements could mean that the difference resulting in the disparate treatment was his race.

is to show an adverse employment decision that resulted from a discriminatory motive. *See, e.g., Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1143 (11th Cir. 1983). "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). The Eleventh Circuit Court of Appeals has repeatedly emphasized that the requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible. *See, e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases).

> In cases where the evidence does not fit neatly into the classic prima facie case formula, for example, [the Eleventh Circuit has] stated that "[a] prima facie case of disparate treatment can be established by any 'proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.'"

*Id.* at 1268 (citing *Hill v. Metro. Atlanta Rapid Trans. Auth.,* 841 F.2d 1533 (11th Cir. 1988), *modified,* 848 F.2d 1522 (11th Cir. 1988) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978))).

With respect to Hines' disparate treatment claim arising out of the termination of his employment, the Court will consider the precedents regarding the nature of a *prima facie* case in similar cases.

> A plaintiff's prima facie case for a discharge-discrimination

15

> claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

*Keel v. U.S. Dep't of Air Force*, 256 F. Supp. 2d 1269, 1285 (M.D. Ala. 2003), *aff'd without opinion*, 99 Fed. Appx. 880 (11th Cir. Mar 02, 2004); *Davis v. Qualico Miscellaneous Inc.*, 161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001). *Accord, Williams v. Motorola,* 303 F.3d 1284, 1293 (11th Cir. 2002). Importantly, an employee cannot establish a *prima facie* case of discrimination by simply arguing that he belonged to a protected class and that he did not engage in the conduct for which he alleges his employment was terminated. *See, e.g., Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.), *superseded in part on denial of reh'g,* 151 F.3d 1321 (11th Cir. 1998)[8]; *Keel*, 265 F. Supp. 2d at 1285; *Thomas v. Ala. Council on Human Relations, Inc.*, 248 F. Supp. 2d 1105, 1119 (M.D. Ala. 2003); *Cooper v. Diversicare Mgmt. Servs. Co.,* 115 F. Supp. 2d 1311, 1318-19 (M.D. Ala. 1999).

With respect to Hines' other claims of disparate treatment, a slightly different articulation of the *prima facie* case is more appropriate. A plaintiff can establish a prima

---

[8] The Eleventh Circuit Court of Appeals withdrew part of its opinion in this case on rehearing and substituted a new section which can be found at *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Nothing in this Memorandum Opinion is based on the portion of the opinion in *Jones* which was withdrawn on rehearing.

facie case by showing that: (1) he was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action by his employer; and (4) similarly situated employees outside of the protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Nevertheless, the prima facie case formulation is flexible and often dependent on the particular facts of a case. *Id.* Thus, the articulation of the *prima facie* case may vary from a case involving a failure to promote to a case involving termination of employment.

Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis,* 161 F. Supp. 2d at 1321.

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision"). Thus, once the employer articulates a legitimate, non-discriminatory reason, the burden returns to the

employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs,* 106 F.3d at 1528. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

Because of the procedural posture of this case, the Court must view the facts before it in the light most favorable to Hines and avoid relying on disputed facts to reach a legal conclusion. The Court finds that the record before it is replete with genuine issues of material fact. Indeed, a reasonable jury could find both that Hines has established a *prima facie* case of race discrimination with respect to the termination of his employment and with respect to his bonuses and leave. Furthermore, a reasonable fact finder could also find that the evidence establishes that the Airport Authority's proffered reasons for its action are pretextual and that it unlawfully discriminated against Hines because of his race.

Accordingly, the Airport Authority's motion for summary judgment must be DENIED.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 20) is DENIED.

DONE this the  day of September, 2010.

                                                                             /s/ Mark E. Fuller  
                                                    CHIEF UNITED STATES DISTRICT JUDGE